**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                    :
THOMAS KANE,                        :
                                    :
    Appellant/Cross-Appellee,   :   Civil Action No.
                                    :   08-5633(FLW)
                                    :
    v.                          :
                                    :       **OPINION**
SHANNON E. KANE,                    :
                                    :
    Appellee/Cross-Appellant.   :
                                    :
_____ :

**WOLFSON, United States District Judge**:

    Appellant/Cross Appellee, Thomas Kane ("Mr. Kane"), and Appellee/Cross Appellant, Shannon Kane ("Ms. Kane"), are engaged in a contentious and bitter divorce. After filing for divorce in the Superior Court of New Jersey, Ms. Kane filed a Chapter 7 bankruptcy petition in New York Bankruptcy Court. Subsequently, Mr. Kane filed a Chapter 13 bankruptcy petition in this district. Both parties appeal an Order from the United States Bankruptcy Court in this district ("Bankruptcy Court") regarding certain equitable distribution claims. The basis for Mr. Kane's appeal is his disagreement with the Bankruptcy Court's finding that Ms. Kane was not obligated to list equitable distribution claims in her Chapter 7 bankruptcy petition, and as such, Ms. Kane is not judicially estopped from pursuing these claims in Mr. Kane's bankruptcy

1

proceeding.  Ms. Kane cross appeals on the basis that the Bankruptcy Court should have permitted her to pursue all of the claims she listed on her proof of claim and not have excluded four of them as being outside of her equitable distribution claims.  For the reasons that follow, the Bankruptcy Court's decision is **AFFIRMED**.

## BACKGROUND FACTS

Because the Court writes for the benefit of the parties, it will only recount facts, the parties' arguments, and the portions of the Bankruptcy Court's decision relevant to this appeal.  The record below shows that Mr. and Ms. Kane were married in August 2004.  They separated 24 months later when Ms. Kane filed for divorce in the Superior Court of New Jersey, Mercer County.  Shortly after their separation, Ms. Kane moved from New Jersey to Long Island, New York.

On September 28, 2007, Ms. Kane filed a Chapter 7 bankruptcy petition in the Eastern District of New York.  Mr. Kane claims that Ms. Kane purposefully and fraudulently omitted certain information from her petition. The crux of Mr. Kane's argument is that Ms. Kane is currently seeking alimony, equitable distribution, and attorney's fees in her divorce proceeding in state court, but that she failed to disclose these claims in her bankruptcy proceeding.  Moreover, Mr. Kane asserts that Ms. Kane also failed to disclose a claim for reimbursement from Mr. Kane of a personal loan to Mr.

2

Kane's sister, which she is also seeking in her divorce proceeding.[1]

Central to this non-disclosure issue is Ms. Kane's 341 meeting during her bankruptcy proceeding, in which Mr. Kane was present as a creditor. At this meeting, Ms. Kane was questioned by the Chapter 7 Trustee (the "Trustee"). According to Mr. Kane, the Trustee specifically asked Ms. Kane about her divorce-related claims and Ms. Kane failed to answer the questions truthfully.[2] Interestingly, however, after questioning Ms. Kane regarding the divorce claims, the Trustee stated on the record that he was satisfied that Ms. Kane's disclosures, albeit her declarations in her bankruptcy petition had several "negligible" omissions, were sufficient for the purposes of her bankruptcy. See Bankruptcy Transcript at p.6.

Moreover, Mr. Kane asserts that when he personally questioned Ms. Kane regarding the divorce claims, Ms. Kane dissembled and quickly changed the subject. At the conclusion of the hearing, the Trustee indicated his intention to negotiate a settlement of the

---

[1] Mr. Kane also maintains that Ms. Kane failed to disclose $318 per month in pendente lite alimony payments she was receiving; an approximately $795 per month increase in pendente lite child support payments; a breach of contract/consumer fraud lawsuit in which Ms. Kane is a plaintiff. However, for the purpose of this appeal, these omissions are not relevant to this appeal. See Mr. Kane's Brief in Support of Appeal at p. 9.

[2] Specific details will be discussed later in this Opinion.

equitable distribution claims with Mr. Kane because the final distributive award would be an asset of the estate.

A week after the 341 meeting, Ms. Kane filed an amended Chapter 7 petition at the behest of the Trustee. In that amendment, she included the $318 per month in alimony and a breach of contract/consumer fraud lawsuit which were not listed in her original petition.

On April 8, 2008, Mr. Kane filed a Chapter 13 bankruptcy in the Bankruptcy Court. Ms. Kane filed an unsecured proof of claim seeking an amount over $390,000 to secure her interests. This amount represented her equitable distribution claims only, leaving alimony and attorney's fees claims to be litigated in the state court. In his bankruptcy proceeding, Mr. Kane argued to the Bankruptcy Court that Ms. Kane should be judicially estopped from pursuing these divorce-related claims because they were fraudulently concealed from creditors in her Chapter 7 proceeding.

On September 9, 2008, the Bankruptcy Court expunged Ms. Kane's claims without prejudice to the right of Ms. Kane to re-file her claims when an award of equitable distribution is entered by the state court. The Bankruptcy Court entered its reasons on the record; it found that the state court should make the appropriate determination as to which claims are within the ambit of equitable distribution. In that regard, the Bankruptcy Court held that any award of equitable distribution granted to Ms. Kane is to be deemed

4

a post-petition claim.  However, the Bankruptcy Court also found that to the extent that Ms. Kane's proof of claim contained claims that do not fall within the parameters of an equitable distribution claim - claims for a loan to Mr. Kane's sister, premarital car loan, wedding expenses and lost social security benefits – Ms. Kane is judicially estopped from filing such claims in Mr. Kane's bankruptcy proceeding as a result of her failure to disclose them in her bankruptcy proceeding.

On appeal, Mr. Kane contends that the Bankruptcy Court erred by finding that (1) Ms. Kane's disclosures at her 341 meeting are sufficient to defeat judicial estoppel; (2) equitable distribution claims are exempt from the Bankruptcy Estate; and (3) Ms. Kane may pursue her judicially estopped claims in state court.  On the other hand, Ms. Kane contends that the Bankruptcy Court's decision should be vacated to the extent that she should not be judicially estopped from bringing any of her non-equitable distribution claims as enumerated by the Bankruptcy Court in Mr. Kane's bankruptcy proceeding.

## DISCUSSION

### I. Standard of Review

When reviewing a bankruptcy court's decision, the standard of review is determined by the nature of the issues presented on appeal. In particular, factual determinations reviewed on appeal should not be set aside unless found to be "clearly erroneous." In

5

re Continental Airlines, 150 B.R. 334, 336 (D. Del. 1993) (citing Bankruptcy Rule 8013 and In re Morissey, 717 F.2d 100, 104 (3rd Cir. 1983)). A factfinder, rather than a reviewing body, is generally in a better position to make judgments about the reliability of evidence; specifically, the reviewing body only acts pursuant to a written record, while the factfinder is able to evaluate the credibility of a live witness. See Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 113 S. Ct. 2264, 2280 (U.S. 1993). In turn, review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." Id. Conversely, legal conclusions from the bankruptcy court "are subject to plenary review by the district court and are considered de novo on appeal." Continental, 150 B.R. 334 at 336. Mixed findings of fact and conclusions of law must be broken down, and the applicable standards - "clearly erroneous" or de novo – must be appropriately applied to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) and Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir. 1981)).

**II. Whether Ms. Kane's Equitable Distribution Claims are Assets of Her Bankruptcy Estate**

In its oral decision, the Bankruptcy Court first explained that with regard to disclosing equitable distribution claims, Ms. Kane had no obligation to list these claims because under the

6

Bankruptcy Code these claims had not accrued at the time of Ms. Kane's bankruptcy proceeding; there must be an entry of judgment of divorce in order for the claims to accrue. Moreover, citing to the Chapter 7 Trustee's decision made in Ms. Kane's 341 meeting, the Bankruptcy Court determined that Ms. Kane had fairly and fully disclosed the equitable distribution claims in her bankruptcy proceeding. In that regard, the Bankruptcy Court reasoned that the Trustee, aware of the claims, made a conscious decision not to pursue them. Nonetheless, the Bankruptcy Court found that there were four specific claims that Ms. Kane is judicially estopped from pursuing - a loan to Mr. Kane's sister, a pre-martial car loan, wedding expenses; and lost social security benefits - because they were not properly disclosed in her bankruptcy proceeding. However, the Bankruptcy Court permitted Ms. Kane to litigate these claims in the state court matrimonial case, where the ultimate determination of whether these four specific claims are within the realm of equitable distribution should be made.

The fundamental issue – whether Ms. Kane was required, at the first instance, to disclose any equitable distribution claim – must be resolved. The Bankruptcy Court found that to the extent that aspects of Ms. Kane's proof of claim are subject to equitable distribution, she did not have an obligation to disclose them, since these claims were not a part of her bankruptcy estate. This Court agrees.

7

This issue requires an analysis of the interplay between the Bankruptcy Code and New Jersey's concept of equitable distribution to determine whether pre-judgment divorce claims are an asset of the bankruptcy estate.  Fortunately, some of these issues have been thoroughly flushed out by bankruptcy courts in our district.  In Buglione v. Berlingeri (In re Berlingeri), 246 B.R. 196 (Bankr. D.N.J. 2000), by looking to New Jersey's law of equitable distribution, the court found that under N.J.S.A. § 2A:34-23 the right to equitable distribution arises upon entry of the judgment of divorce.  Id. at 200 (citing Carr v. Carr, 120 N.J. 336, 576 A.2d 872 (1990)).  Under the Third Circuit's interpretation of the terms "debt" and "claim" in the Bankruptcy Code, if the right to payment has not accrued before commencement of the bankruptcy case, the debt did not arise before the order for relief.  Avellino & Bienes v. M. Frenville Co. (In re Frenville), 744 F.2d 332 (3d Cir. 1984), cert. denied, 469 U.S. 1160 (1985). The court then concluded that the "[a]pplication of Frenville and New Jersey law [necessarily] yields the conclusion that [a party's] claims for equitable distribution did not arise until the judgment of divorce was granted. Thus, [the] claims constituted a non-dischargeable post-petition obligation. Buglione v. Berlingeri, 246 B.R. at 200. In other words, "where a bankruptcy filing preceded a judgment of divorce, the pending claim for equitable distribution is a post petition claim." In re Howell, 311 B.R. 173, 178 (Bankr. D.N.J.

8

2004)(citations omitted).[3]

Section 541(a)(1) of Title 11 of United States Code provides that "[t]he commencement of a case under 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

> (1) Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>
>     . . .
>
> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date --
>
>     (A) by bequest, devise, or inheritance;
>
>     (B) as a result of a property settlement agreement with the debtor's spouse, or

---

[3] The Court is not persuaded by Mr. Kane's reliance on Reid v. Reid, 310 N.J. Super. 12 (App. Div. 1998). In that case, the equitable distribution issues were resolved by a settlement agreement approved by the bankruptcy court. In particular, the parties consented to the trustee assuming jurisdiction "of all issues pertaining to the debtor's property, including marital property she may hold with [her husband]." Id. at 16. The Reid curt held that because the bankruptcy court had already approved the settlement with respect to marital property, a party cannot collaterally attack the judgment in a divorce proceeding. Id. at 19-20. Accordingly, the court's holding did not address whether the post-petition equitable distribution claims are an asset of the bankruptcy estate. Morever, contrary to Mr. Kane's assertions, the Reid court found that dissolution, alimony, and the apportionment of legal fees and costs are proper consideration for a state matrimonial court to consider. Id. at 17.

>            of an interlocutory or final divorce
>            decree; or
>
>     (C)    as a beneficiary of a life insurance
>            policy or of a death benefit plan.

11 U.S.C. § 541. In other words, the bankruptcy estate also includes any post-petition interest in property that the debtor acquires within 180 days of the filing date by way of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree, so long as that property would have been property of the estate if the debtor had acquired it by the filing date. Kalmanson v. Nofziger (In re Nofziger), 2007 U.S. Dist. LEXIS 11677, at *4 (M.D. Fla. 2007); see also Logan v. Williams, 400 B.R. 479, 493 (Bankr. D. Md. 2008).

Having delineated these legal precepts, the final inquiry is whether a post-petition equitable distribution claim that has not been finalized in a divorce proceeding is an asset of a bankruptcy estate. The inquiry is straight-forward. At the time the bankruptcy was filed, Mr. and Ms. Kane were still married. Therefore, Ms. Kane's interests in the martial property subject to equitable distribution would only have become part of the property of the estate if the divorce or property settlement occurs within 180 days of the petition date. Logan, 400 B.R. at 493; see, e.g., In re Wise, 346 F.3d 1239, 1243 (10th Cir. 2003)(holding alimony payments that are not due and payable until after date of filing are not property of bankruptcy estate); In re Peterson, 280 B.R.

886, 892 (Bankr. S.D. Ala. 2001)(same holding); Gannett v. Carp (In re Carp), 340 F.3d 15, 26 (1st Cir. 2003)(a debtor's equitable interest in a property that was part of the marital estate is not property of the debtor's bankruptcy estate unless the debtor acquires it within 180 days of the date of filing bankruptcy). As such, at the time of the filing of her bankruptcy petition, Ms. Kane's equitable distribution claims were not part of her bankruptcy estate. Having undertaken a de novo of the Bankruptcy Court's decision in this regard, the Court finds that the Bankruptcy Court's rejection of Mr. Kane's standing argument is sound.[4]

### III. Ms. Kane's Bankruptcy Disclosures

While the Bankruptcy Court stated that even without the obligation to disclose equitable distribution claims, Ms. Kane cannot conceal these marital property interests from her creditors. But, the Bankruptcy Court ultimately found that Ms. Kane's disclosures during her 341 meeting to the Trustee were sufficient, with the exceptions of her disclosure with respect to wedding expenses, a pre-martial car loan, lost social security benefits and

---

[4] Mr. Kane cites to 11 U.S.C. § 522(d)(10)(D) for the proposition that alimony, support, or separate maintenance are exempt from the bankruptcy estate only to the extent reasonably necessary for the support of the debtor. In that regard, Mr. Kane argues that alimony and equitable distribution claims are a part of the bankruptcy estate upon filing. However, this provision speaks to alimony that has been awarded by a final divorce decree. See Milligan v. Evert (In re Evert), 342 F.3d 358, 368 (5th Cir. 2003).

11

a loan to Mr. Kane's sister.  Mr. Kane argues on appeal that informal disclosure to the Trustee is insufficient disclosure and it does not defeat a judicial estoppel claim.

To begin, the Court will discuss the relevant law regarding disclosure and judicial estoppel in the Third Circuit.  Under 11 U.S.C. § 1125(b), a party seeking chapter 11 bankruptcy protection has an affirmative duty to provide creditors with a disclosure statement containing "adequate information" to "enable a creditor to make 'an informed judgment' about the Plan." 11 U.S.C. § 1125(a)(1).  "Debtors must therefore identify and disclose all 'property of the estate' including all of the debtor's 'legal and equitable' property interests." Krystal Cadillac-Oldsmobile GMS Truck, Inc. v. GMC, 337 F.3d 314, 322 (3d Cir. 2003).  This includes such contingent assets as any cause of action Ms. Kane may have against Mr. Kane; neither party argues to the contrary.

To this end, the Third Circuit has reiterated:  "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of adequate information."  Id. (quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416-18 (3d Cir. 1988)).

To redress the problems of non-disclosure, the Third Circuit applies the doctrine of judicial estoppel. Under this doctrine, "a

12

plaintiff, who has obtained relief from an adversary by asserting and offering proof to support one position, may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention." Scarano v. Central R. Co. of N.J., 203 F.2d 510, 513 (3rd Cir. 1953). "The basic principle of judicial estoppel . . . is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996). In other words, the doctrine is to prevent a litigant from "playing fast and loose with the courts." Scarano, 203 F.2d at 513. (internal quotation marks omitted). To prevent such practices, courts have the inherent ability "to dismiss an offending litigant's complaint without considering the merits of the underlying claims." Krystal Cadillac, 337 F.3d at 319 (quotations omitted).

However, this type of relief is an extraordinary remedy to be invoked when "a party's inconsistent behavior will otherwise result in a miscarriage of justice." Ryan, 81 F.3d at 365; see also Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773 (3rd Cir. 2001). Judicial estoppel is therefore not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be. See In re Chambers Development Co., Inc.,

148 F.3d 214 (3rd Cir. 1998).

In order to invoke the doctrine, "the party to be estopped must have taken two positions that are irreconcilably inconsistent." Montrose Medical Group, 243 F.3d at 779-80. Second, "judicial estoppel is unwarranted unless the party changed his or her position 'in bad faith --i.e., with intent to play fast and loose with the court.'" Id. Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct. Id. at 780; see also Krystal Cadillac, 337 F.3d at 319. The determination of whether to apply the doctrine lies within the sound discretion of the Bankruptcy Court. See In re: Okan's Foods, Inc., 217 B.R. 739, 752 (Bankr. E.D. Pa. 1998).

It is important to note that Ms. Kane's non-disclosure must amount to a false representation or concealment of a material fact. See generally In re Atlantic Marble, Inc., 126 B.R. 463, 467 n.1 (Bankr. E.D. Pa. 1991). "The knowing failure of a party to disclose a material fact under circumstances wherein such party had both the duty and an opportunity to speak, may, where no plausible explanation or excuse for such silence exists, be construed as a false representation or concealment by such party." In re Okan Foods, 217 B.R. at 752 (citing to Oneida, 848 F.2d at 416-17).

While neither party disputes the applicability of the judicial

14

estoppel doctrine, Mr. Kane vigorously argues that informal disclosure to a bankruptcy trustee does not trump a judicial estoppel argument.  For support, Mr. Kane cites to a slew of cases for that proposition.[5]  Specifically recognizing that the holdings of Jeffery v. Desmond, 70 F.3d 183 (1st Cir. 1995) and Vreugdenhill v. Navistar Intern'l Transp. Corp., 950 F.2d 524 (8th Cir. 1991), were to the contrary, the Bankruptcy Court here held that the disclosures made in Ms. Kane's 341 meeting were sufficient for the purposes of judicial estoppel.  This Court does not find that the Bankruptcy Court erred when applying the judicial estoppel doctrine.

Significantly, none of the cases cited by Mr. Kane involve failure to disclose equitable distribution claims.  For example, both Jeffery and Barger v. City of Cartersville, 348 F.3d 1289 (11th Cir. 2003), involved non-disclosures of the existence of an employment discrimination lawsuit.  This distinction is crucial because at the time of her bankruptcy filing, Ms. Kane did not have the obligation to disclose her equitable distribution claims, as discussed above, since a final divorce decree has not been entered.  Morever, this is not a case where Ms. Kane deliberately concealed the existence of the divorce proceedings from the creditors in bad faith.  Rather, the obligation on Ms. Kane to disclose had not

---

[5] It is important to note however, Mr. Kane did not cite to any Third Circuit cases or any New Jersey state cases.

arisen by operation of the Bankruptcy Code, as explained supra.[6]

On the other hand, the Bankruptcy Court also recognized that Ms. Kane did not have the absolute right to conceal the existence of her equitable distribution claims. See Tilley v. Anixter Inc., 332 B.R. 501, 509 (D. Conn. 2005)("in order for a bankruptcy trustee to accurately determine how much property an estate has available for distribution to creditors, the schedule of assets must put him or her on notice of all potential assets"). In that regard, the Bankruptcy Court was satisfied that the informal disclosure to the Trustee at the 341 meeting was sufficient to put the parties in interest on notice. Importantly, the Bankruptcy Court relied upon the Trustee's position on the record that Ms. Kane's disclosures were sufficient. While the Court does not hold here, as a general proposition, that informal disclosure to a trustee is sufficient to defeat judicial estoppel, it nevertheless concurs with the Bankruptcy Court's finding because the purpose of informal disclosure in this case is not meant to cure the obligatory disclosure requirements under the Bankruptcy Code, but instead to put other parties on notice of the existence of these claims. Merena v. Merena (In re Merena), 2009 Bankr. LEXIS 2838 (Bankr. D. Mo. 2009)(the failure of the debtor to disclose her

---

[6]As Ms. Kane's counsel suggested, and this Court agrees, Ms. Kane's bankruptcy attorney most likely advised Ms. Kane not to disclose the equitable distribution claims in detail because there was no obligation to do so.

16

pending divorce proceeding was immaterial, because the trustee testified that the omitted lawsuits bear no relationship to the debtor's bankruptcy estate and do not concern business dealings or the existence and disposition of the debtor's property). In fact, the Bankruptcy Court found that the Chapter 7 Trustee was aware of the right to equitable distribution and that Ms. Kane was seeking equitable distribution in state court. Despite that knowledge, the Trustee made a conscious decision not to pursue it. See Bankruptcy Transcript at p. 6.

**IV. Whether The Bankruptcy Court Erred in Finding that Ms. Kane Cannot Pursue Four Categories of Claims**

While the Bankruptcy Court did not find that Ms. Kane is judicially estopped from pursuing her equitable distribution claims, it did find that four specific claims do not fall within the ambit of equitable distribution - wedding expenses, a pre-martial car loan, lost social security benefits and a loan to Mr. Kane's sister. However, the Bankruptcy Court reserved such a final determination for the state family court. In other words, if the state court finds that these claims are subject to equitable distribution, Ms. Kane may pursue them in Mr. Kane's bankruptcy. However, if the state court finds otherwise, Ms. Kane is judicially estopped from filing these claims here. The Court finds that the Bankruptcy Court's holding in this context was not clearly erroneous.

Ms. Kane submits that she disclosed the existence of the

17

matrimonial litigation on her bankruptcy petition Statement of Financial Affairs, and disclosed Mr. Kane as a potential disputed creditor due to pending matrimonial litigation on Schedule F of the petition.  Moreover, Ms. Kane asserts that she relied upon the advice of counsel for any and all disclosures made, and therefore, she did not list her prejudgment equitable distribution claims as an "account receivable" on Schedule B.  However, the Bankruptcy Court specifically carved out the four components of Ms. Kane's claims because it found that they were not a part of the equitable distribution claims.  As such, these four claims were required to be listed on the petition.

Ms. Kane does not dispute that these four specific claims were not listed on her Schedule B.  Nor does she dispute that these claims were not disclosed fully and fairly in the 341 meeting. Rather, Ms. Kane argues that she relied on the advice of counsel. Such reliance is insufficient to defeat judicial estoppel.  See Barger, 348 F.3d at 1295-96 ("[e]ven if Barger's failure to disclose could be blamed on her attorney, the nondisclosure could not in any event be considered inadvertent").  In any event, a final determination has not been made by the state court.  Ms. Kane is free to make her arguments regarding what items fall within equitable distribution in her divorce proceeding.[7]

---

[7] The Court notes that in the event the state court in the divorce proceeding decides that any of Ms. Kane's claims are not subject to equitable distribution, Mr. Kane can raise his

Finally, Mr. Kane seeks a relitigation injunction to enjoin Ms. Kane from relitigating issues that were decided by the Bankruptcy Court.  This Court finds such injunction unnecessary.  The Bankruptcy Court has essentially deferred to the state court with respect to the determination of whether four specific claims of Ms. Kane are a part of her equitable distribution claims.  Mr. and Ms. Kane are therefore free to litigate those issues in state court.

Accordingly, the Bankruptcy Court's decision is **AFFIRMED**.

/s/    Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Date: September 30, 2009

---

estoppel argument again to the Bankruptcy Court.